## SWIFT & CO. EMPLOYES BENEFIT ASS'N v. LEMIRE.

No. 14138.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 22, 1940.

Rehearing Denied Dec. 20, 1940.

J. Kirby Smith, Thompson & Barwise, and Seth Barwise, all of Fort Worth, for appellant.

A. J. Baskin and C. A. Wright, both of Fort Worth, for appellee.

SPEER, Justice.

Irma Lemire instituted this suit against Swift & Company Employes Benefit Association for weekly compensation benefit, under a contract in the form of a policy of insurance alleged to cover the facts plead. Parties will be designated as they were in the trial court. In the testimony and occasionally in the briefs, defendant is referred to as "E. B. A."

Defendant is an independent corporation, carrying what may be termed week-to-week insurance against sick and accident disabilities in favor of employes of Swift & Company; it did not issue contracts to any person other than the employes of Swift & Company.

Plaintiff made application for and procured the issuance of a policy in her favor. She claims to have received an accidental injury on or about September 18th, 1938, while in the employ of Swift & Company, while the contract was in effect; she alleged notice to her employer and all other requirements sufficient to entitle her to recover under the terms of the policy.

Defendant answered by general denial and special defenses. The only phase of the answer necessary to mention being one in which it was denied that the contract was in effect at the date mentioned, because the policy had lapsed for failure to pay the premium for the week the injury is alleged to have been sustained.

The case was tried to a jury on special issues. The issues submitted and their answers were to the effect that: (1) the plaintiff sustained an injury to her person on about September 15th, 1938, while working in the plant of Swift & Company; (2) plaintiff has been totally disabled continuously since the date of her injury up to the present time; (Date of trial was September 13th, 1939); and (3) the premium on the accident and health policy sued on would have been deducted from her last pay check if she had not received an injury.

Upon the verdict, judgment was entered in plaintiff's favor for $6 per week for 52 weeks intervening between the date of the injury and date of trial, the aggregate amount being $312, with interest at 6 per cent. since September 15th, 1938. New trial was denied and this appeal was perfected by defendant, admittedly upon the sole ground that the uncontroverted evidence disclosed that the premium had not been paid and the court erred in not directing a verdict for defendant upon its motion to that effect.

Plaintiff had worked for Swift & Company at intervals of from two days to several weeks at various times over a period of several years. On March 29th, 1937, plaintiff signed an application to defendant for the issuance of its health and accident policy to her as an employe of Swift & Company. In so far as is necessary to here state, the application contained representations that she was an employe of the fourth class (fixed by a wage rate) and agreed to be bound by the rules of the defendant association. The following stipulation is in the application: "I also agree, request and direct, that Swift & Company, or my employer, by its proper agents, and in the manner provided for in such Rules, shall apply as a voluntary contribution from any wages earned by me under said employment the sum of 30 cents per week for the purpose of securing the benefits provided in the Rules for a member of the Benefit Association of the 4th class * * ."

The policy contract was issued by defendant on April 22nd, 1937, based upon the application and recites that membership commenced on March 29th, 1937. The application and policy must be considered as embracing the contract between the parties.

It was shown by the uncontradicted testimony that plaintiff slipped and fell on the floor while working for Swift & Company on about September 15th, 1938, and sustained serious injuries, and had been unable to perform any labor since that time; she testified about falling and that she immediately notified her foreman, Jimmie Schick, that she had fallen and hurt herself, but that she did not think it serious; that the accident happened at night and that the company doctor was not in his office at that time; she testified at length as to the nature of her injuries and the effect which rendered her incapable of doing any further work up to the time of

the trial. She was corroborated by her mother and a physician regarding the nature and extent of her injuries. Defendant offered no testimony to refute either. The mother further testified that she took the telephone number from the directory and called Swift & Company's office and some one there answered; she did not know to whom she talked in the office; she told them that her daughter (the plaintiff) would not be back to work that day because she was injured while at work the night before. She said she told the person to whom she talked, she wanted to find out about her daughter's E.B.A. insurance, and he said, "they would look into it." There was no denial by any employe from the office that such a conversation took place. The fact that the witness could not tell the name of the person to whom she talked on the telephone did not render her testimony inadmissible, so as to eliminate the corroboration of plaintiff's testimony that notice was given. The admissibility of the testimony and its probative effect is analogous to the rule in admitting in evidence letters written by one in response to a properly addressed letter written by another. In such circumstances it is well settled that such a response is admissible upon the theory that the writer is presumed to have authority from his principal to write it. General Missionary Society, etc., v. Real Estate Land Title & Trust Co., 134 Tex. 564, 136 S.W.2d 599, opinion adopted by Supreme Court.

Subsequent to the issuance of the policy contract sued on, and prior to the events involved here, plaintiff had been called back to work for Swift & Company, and worked as long each time as her employer had a place for her; when no longer needed, she was so advised and laid off until called back. On September 13th, 1938, the agent of Swift & Company who hires and discharges employes for the department in which plaintiff worked, called and asked if she could work the next day; she reported for work next day, procured a card from her foreman, took it to the company doctor, got a medical certificate, returned to the office and was given the customary metal tag bearing her employment number, and was then put to work; she worked the nights of September 14th and 15th, and was injured during the last evening. She said that she had always been paid by checks, and that the one received for August time did not have on it a notation that premium for E.B.A. had been deducted and she asked Bobby Capps, an employe in the time office, whether or not she had the insurance, and he advised her that she did have and that she would be advised when she did not have the insurance. She said that no one ever advised her that she did not have the E.B.A. insurance. Plaintiff was earning 40½ cents per hour and worked 12½ hours on the 14th and 15th of September, 1938, amounting to $5.06; there was an additional earning of 29 cents, aggregating $5.35; a 5 cents Social Security tax was deducted, leaving her net earnings for the two days $5.30. Plaintiff did not call for her check until the following March, when she wrote a note and sent it by her mother to Swift & Company, asking for payment of her wages. The mother was paid the amount in cash. Plaintiff said she did not know whether premium was deducted for E.B.A.; she did not know just how much time she had made; in fact, thought she had worked three days.

Defendant offered as a witness, Mr. Carswell, the assistant time keeper for Swift & Company. By him it was shown that plaintiff had been employed, laid off and "rehired" a number of times; in some instances deductions of premium were made from plaintiff's pay check and from others no deductions were made. He said the rules of defendant were such that unless an employe worked a week or nearly so, no E.B.A. insurance was allowed and no premiums were deducted from wages by Swift & Company. He said his records showed that on one occasion when plaintiff had worked 13 hours in a week, deductions were made for the insurance. That these matters are controlled by the employe of defendant who inspected time sheets of employes and when he considered an employe permanent and not transient or temporary, the insurance was allowed and collected for, but where an employe was shown by his time to be temporary, no insurance was carried and no premiums collected. He said that when an employe worked only a short time and was laid off they were usually paid for the time and since there would be no wages left in the hands of Swift & Company from which premiums could be deducted, they are not given E.B.A. insurance; they are classed as temporary employes; the witness said C. W. Welborn, an employe of Swift & Company, was the one who determined whether or not an employe was entitled to E.B.A. insurance. Mr. Welborn did not testify. Mr. Carswell

also testified that one like plaintiff who had been employed and laid off and had E.B.A. insurance while at work, and returned upon request of Swift & Company and worked two or three days and was not laid off, would receive insurance. That plaintiff was laid off on September 15th because he saw that order on her time sheet. He said plaintiff was cut off from insurance when her premium was exhausted; that defendant did not cut an employe off from insurance if they quit work for sickness or injury; that no insurance was allowed only when they had been laid off by Swift & Company within less than approximately a week from the time they began work.

As stated above, defendant's sole contention here is that the court should have directed a verdict for it; counsel admit in their brief that if no directed verdict should have been given, 'the judgment of the trial court should be affirmed by us, and that if it should have been given, the judgment should be reversed and rendered for defendant.

■ As we view the record, a directed verdict for defendant would not have been proper. The undisputed evidence discloses that plaintiff had worked many times for Swift & Company, during the time since the policy was issued; it is equally certain that defendant did not consider that she was a temporary employe, such as it would not extend the benefits of insurance to, for it had often collected premiums through Swift & Company from her wages, the means agreed upon in the application. When she was called back to the plant on September 14th, there was nothing to indicate whether the employment was for a short or long time; the presumption is that it would last until she was laid off by the employer. There is no testimony whatever that she was laid off after she had worked two days, but the uncontradicted evidence is that she did not return on account of the injuries sustained. Moreover, it appears from the testimony of defendant's only witness, Mr. Carswell, that if plaintiff worked less than a week and was not laid off by the company but failed to work longer because of an injury, she would not be denied, under the rules of defendant, the protection given in the contract. As we understand the evidence, this is precisely what happened; the insurance could not be denied plaintiff because she had worked so short a time as to have no wages due from which a premium could be deducted, falling within one of the rules of defendant testified about; she had ample wages due her from Swift & Company, from which the premium could have been deducted, had defendant desired to have it done.

■ It is the well-settled rule in this State that when a jury trial is demanded and the evidence is such as reasonable minds could differ and a jury question is raised, the court should not direct a verdict. Put another way, if there was evidence of a substantial nature from which a jury could resolve the facts in favor of plaintiff, then the trial court should not direct a verdict. In determining whether or not there is sufficient evidence to support a verdict when rendered, the test is said to be: If discarding all adverse evidence, and giving credit to all evidence that is favorable to the successful party and indulging every legitimate conclusion that is favorable to him, a jury might have found in his favor, then it is to be concluded that there is evidence to support the verdict." 17 Tex.Jur., § 410, pp. 910-911, and the authorities there cited.

■ This is not a case where an insured sues for benefits under a policy of insurance when she had obligated to pay premiums in advance for the period covered, such as was discussed in the cases cited by defendant. In those cases liability was denied because the contract had not been performed by paying premiums necessary to keep the policy effective. The present case is quite the contrary. Here premiums were to be paid after the expiration of the time covered by the policy, and then to be paid by a deduction by Swift & Company from the wages earned by the insured. Swift & Company became defendant's collecting agent. That company had sufficient funds in its hands for six months, belonging to plaintiff, with which to pay the premium. With respect to payment of the premium, Swift & Company stood in the shoes of defendant, so long as it had plaintiff's funds in its hands. Plaintiff should not be penalized because Swift & Company did not appropriate enough of her money then in its hands to the payment of the premium. She had a right to rely upon the provisions of the contract which provided for payment in this way.

It could not be successfully contended that if defendant had had in its hands funds belonging to plaintiff, and refused to apply them to the payment of a premium for in-

surance when due, that it could thus decline and forfeit a policy of insurance for non-payment of premium. 24 Tex.Jur., § 139, p. 863; North American Accident Ins. Co. v. Bowen, Tex.Civ.App., 102 S.W. 163, writ refused. In the cited case, the universally recognized rule is stated to be that the law does not favor forfeitures, but that the contract should be liberally construed so as to avoid a forfeiture and to bring about the end sought to be accomplished by it. In the case last cited, the insurer had in its hands funds belonging to the insured, but failed to apply them to the payment of premiums due. The court quoted with approval from Brady v. Coachman's Benev. Soc., N.Y.City Ct., 14 N.Y.S. 272, 273, where it was said: "It would indeed be strange law and bad morals which would hold him [insured] in default for his dues, and at the same time exonerate the association from payment of the sick benefit."

To uphold defendant's contention and relieve it of payment under the contract because no premium had been paid for the week covered, would be to lend sanction to what appears to us to be a strained construction of the terms of the policy. Here we have plaintiff, who cannot be termed a temporary employe of Swift & Company, under defendant's explanation of the rules under which the association operated, for she worked at the plant many times and was allowed coverage from time to time and was denied it at other times. She contracted to pay 30 cents per week for the protection provided in the policy, this to be collected by Swift & Company from her wages. She had worked enough that her wages in the company's hands were more than enough to cover premiums. Before she had worked a whole week she received the injury which incapacitated her. In the nature of things she could not continue to work the remainder of the week. To permit defendant to decline to collect the thirty cents premium for that week and escape liability because she had not been working a week, or a major portion of it, and claim the policy was forfeited for non-payment of premium, does not comport with our idea of a fair and reasonable construction of the contract. To do so would be to hold that the insurance was not carried for a week, but only for a major portion thereof and whether or not the insured was a temporary employe would be left to the arbitrary discretion of defendant. In such a situation an employe would never be entitled to recover if he was injured or had to quit for sickness during the first half of the week. We believe and so hold that under the terms of the contract if a person was employed by Swift & Company for an indefinite period and was not discharged or laid off by the company within the week, but was forced to quit for sickness or accidental injury, he would be protected under the terms of the policy. Certainly the defendant would be entitled to collect the premium, but an hour's work by an employe, such as was plaintiff, would be sufficient to enable defendant to collect the premium. In any event, when defendant became liable it would be indebted to the insured and would be authorized to apply enough of the insured's funds in its hands to payment of any premium due. When its agent, Swift & Company, failed to deduct the premium from plaintiff's wages earned, defendant should have deducted the amount from what it owed plaintiff and carried out its contract.

We have not attempted to relate all of the evidence, nor even that part most favorable to defendant, but following the rule of law announced above, we have referred only to those parts most favorable to the plaintiff, in determining if it was sufficient to support the verdict rendered. We think it ample. The trial court, therefore, did not commit reversible error in refusing to sustain defendant's motion for a directed verdict; the assignments of error raising the point are overruled, and the judgment is affirmed.